UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Anthony Chambers,

        Plaintiff,

        v.

Town of Fair Haven, Vermont; Joseph Gunter,
Town Manager; Selectboard Members
Christopher Cole, Glen Traverse, Jay Brown,
Robert Richards, Richard Goodnough; and
Sean Galvin,

        Defendants.

Civil Action No. 2:22–cv–124–kjd

**OPINION AND ORDER
DENYING IN PART AND GRANTING IN PART
<u>DEFENDANTS' MOTION TO DISMISS</u>**
(Doc. 25)

Plaintiff Anthony Chambers, representing himself, brings this action under 42 U.S.C.

§ 1983 against Defendants Town of Fair Haven (the "Town"), Fair Haven Town Manager Joseph

Gunter, Fair Haven Selectboard members Christopher Cole, Glen Traverse, Jay Brown, Robert

Richards, Richard Goodnough, and Constable Sean Galvin[1] (collectively, "Defendants")

following the Town's suspension of water service to Plaintiff's residence over a three-day period

in June 2022. (Doc. 13.)

Plaintiff appears to allege the following causes of action arising from the termination of

water service: (1) a claim under § 1983 that Defendants deprived him of the right to water

service without due process of law, in violation of the Fourteenth Amendment; (2) a § 1983

claim against the Town of Fair Haven under *Monell v. Dep't of Soc. Servs. of City of New York*,

---

[1] On January 9, 2023, Defendant John Lulek, the Town Health Officer, was dismissed by
stipulation. (Docs. 36, 38.)

436 U.S. 658 (1978) alleging that the Town has a "history, custom, or policy" of violating "people's civil rights and not following statutes" (Doc. 13 at 3, ¶ 15); (3) state-law claims that Defendants have failed to comply with Vermont's Uniform Water and Sewer Disconnect law (the "Disconnect Statute") and the Town of Fair Haven Water Ordinance; and (4) state-law claims for intentional and negligent infliction of emotional distress.

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief can be granted.  (Doc. 25.)  Specifically, Defendants contend that as a matter of law Plaintiff received adequate due process prior to disconnection of his water service.  Defendants further assert that Plaintiff was afforded an opportunity to appear at a pre-disconnection Selectboard hearing, and that he also had a post-deprivation remedy in the form of a Rule 75 hearing in Superior Court to review the Town's action.  As a result, Defendants contend that Plaintiff's federal claims are "fatally flawed" such that amended pleadings would be futile.  (Doc. 25 at 6.)

For the reasons discussed below, Defendants' Motion is GRANTED in part and DENIED in part.  The Court grants Plaintiff leave to file an amended complaint.

## Background

### I.      Plaintiff's Allegations

Plaintiff, a resident of Green Mountain Mobile Manor Trailer Park (the "Park") in Fair Haven, Vermont, alleges that Defendants violated his "[§] 1983 civil rights for lack of Due Process of the 14th Amendment of the Constitution . . . involv[ing] our protected property right to water from the Town of Fair Haven."  (Doc. 13 at 1, ¶ 3.)  Plaintiff states that his landlord was "behind on the water bill to the Town."  (*Id.* at 2, ¶ 6.)  The Park is owned by Rodney White, who is the ratepayer for the Park's water bill.  Plaintiff alleges that the Town:

> shut the water off to our mobile homes in the trailer park.  The notice we got was
> not in the form of the Statute and did not provide all the information that it was
> supposed to about medical problems and getting a note from a doctor.  The notice
> did not follow the Vermont Statute and Due Process for our protected water
> property rights under the Fourteenth Amendment.

(*Id.* ¶ 7.)

Plaintiff asserts that the Town shut the water off from June 1 to June 3, 2022, after which

the Town restored water service.  (*Id*. ¶ 8.)  He alleges that the loss of water during that period

was "very difficult because [residents] have to take medicine, bathe [them]selves and small

children, flush toilets, cook, do dishes, [and] wash clothes . . . ."  (*Id.* ¶ 9.)  He also alleges that

the lack of water service posed special problems for other residents of the Park with specific

medical conditions.[2]

Plaintiff further alleges that the Town's Water Ordinance required the Town to "follow

24 V.S.A. [Chapter] 129, the Uniform Water and Sewer Disconnect."  (*Id*. at 3, ¶ 13.)  He asserts

the Town "ignored the law, violated [their] civil rights and did not give [them] the Due Process

Notice of the 'Other Important Information' (medical) from the Uniform Notice."  (*Id.* ¶ 14.)  He

claims that the Town has "a history, custom or policy of violating people's civil rights" and not

following the law.  (*Id.* ¶ 15.)

Plaintiff attaches to his Complaint the following documents: (1) an excerpt from the

Town's Water Ordinance; (2) an undated water disconnect notice that he alleges the Town

provided to Park residents; (3) a May 13, 2022 letter from the Town's Accounts Receivable

Clerk to Plaintiff advising him of the potential discontinuation of water service and his

opportunity to appear before the Town Selectboard prior to the discontinuation; and (4) Town

---

[2]  Although Plaintiff's allegations refer to other residents of the Park, the Court has previously noted that, as the sole signatory of the Complaint, Plaintiff Chambers is the only Plaintiff in the case at this time.

Health Officer John Lulek's June 2, 2022 Complaint and Inspection Form containing his conclusions as to the habitability of the Park without water.[3]  (*See* Docs. 13-1, 13-2.)

The undated notice is entitled "Water Disconnect" and is addressed to Rodney White as the property owner.  (Doc. 13-2 at 1.)  The notice states: "Your water service will be disconnected on Monday, May 16, 2022.  To avoid disconnection, the delinquent amount below must be paid in full by close of business on Friday, May 13, 2022.  After that date, the balance due will include a reconnect fee."  (*Id.*)  The Delinquent Amount is listed as $18,506.38 and the Total Amount Due, including fees, is listed as $18,531.38.

The May 13, 2022 letter to Plaintiff is addressed to "Tenant of: Rodney White" and states it was sent by certified mail to "Tenant."  (*Id.* at 2.)  In pertinent part, the letter states:

> The delinquent balance due on the above listed account remains unpaid either in part or in full and said service is subject to discontinuation of service.  As a tenant of the property owner, before discontinuation may occur, the Selectboard of the Town of Fair Haven will provide you the opportunity to plead your case prior to discontinuation.
>
> The Board could hear you on Tuesday, May 31, 2022 at their regularly scheduled meeting at 7:00 P.M. in Conference Room #1 in the Municipal Building.  Please contact the Town Office . . . no later than Friday, May 27, 2022 to confirm your attendance.  If we do not receive confirmation of your attendance at this meeting or if the delinquent balance is not paid in full, we will move forward with the discontinuation of water service on Wednesday, June 1, 2022.

(*Id.*)

The June 2, 2022 Complaint & Inspection Form, signed by Health Officer Lulek, lists the complainant as the Town of Fair Haven and the reason for complaint as "Town shut off water to

---

[3]  The Court's review on a motion to dismiss is limited to the facts "contained within the four corners of the complaint," *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010), and "any written instrument attached to [the complaint] as an exhibit, any statements or documents incorporated in it by reference, and any document not incorporated but that is, nevertheless, integral to the complaint because the complaint relies heavily on its terms and effect."  *Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) (alteration in original) (internal quotation marks omitted).  Therefore, the Court may properly consider the documents attached to Plaintiff's Complaint.

mobil[e] home park." (Doc. 13-2 at 3.)  The section of the form entitled "overall inspection findings and required corrections" states: "Residents of Green Mountain Mobil[e] Home Park cannot reside in mobil[e] home park wit[h]out running water." (*Id.*)  The Form included a required compliance date and follow-up inspection date of June 15, 2022. (*Id.*)

## II.   Vermont's Statutory Scheme Governing Water Service

Vermont law authorizes and empowers municipalities to provide water service and to "distribute the same through such municipal corporation for the purpose of supplying the inhabitants thereof with water for fire, domestic and other purposes." *Brown v. City of Barre*, Vt., 878 F. Supp. 2d 469, 476 (D. Vt. 2012) (quoting 24 V.S.A. § 3301).

Vermont's Disconnect Statute "authorizes municipalities to disconnect water service 'as a delinquency collection procedure.'" *Id.* (quoting 24 V.S.A. § 5141).  The statute defines "disconnection" as "the deliberate interruption or disconnection of water . . . service . . . to a ratepayer by the servicing municipality for nonpayment of water . . . charges." 24 V.S.A. § 5142(2).  "Delinquency" is the "failure of the ratepayer to tender payment for a valid bill or charge." *Id.* § 5142(3).  The Disconnect Statute does not define the term "ratepayer." As *Brown* explained:

> A "ratepayer" may avoid water service termination pursuant to several statutory exceptions which include delinquencies of less than fifteen dollars; charges that are the subject of a pending appeal; a delinquency due only to nonrecurring charges (such as the provision of a deposit); if the ratepayer had not been "given an opportunity to enter into a reasonable agreement to pay the delinquent bill, or having made such agreement, has abided by its terms; and where disconnection would represent "an immediate and serious hazard to the health of a ratepayer or a resident within the ratepayer's household, as set forth in a physician's certificate which is on file with the municipality."

*Brown*, 878 F. Supp. 2d at 476–77 (quoting 24 V.S.A. § 5143(b)).

The Disconnect Statute requires notice to both the "ratepayer" and the "occupant" prior to disconnection. *Id.* at 477.  The statute provides:

> No municipality shall disconnect service to a ratepayer unless payment of a valid bill or charge is delinquent as defined herein, and notice of disconnection has been provided previously to the ratepayer.  A copy of the notice shall be sent to the occupant of a residential dwelling which will be affected by the disconnection if the occupant is different than the ratepayer.

24 V.S.A. § 5143(a).

The Disconnect Statute requires at least fourteen days' notice prior to a disconnect.

24 V.S.A. § 5142(5).  Under the statute, "'[n]otice' means the written notice on the form prescribed in section 5144 of this chapter, sent within 40 days after delinquency and postmarked and sent not more than 20 days, nor less than 14 days prior to the disconnect of service." *Id.*[4]  It further permits an appeal from a disconnect by only the "ratepayer" to a municipal selectboard or hearing officer.  *Id.* § 5147.

The Disconnect Statute requires the municipality to restore water service when an agreement is reached with the "ratepayer."  24 V.S.A. § 5146.  In a subsection added after this Court's *Brown* decision, the statute also provides:

> The tenant of a rental dwelling noticed for disconnection due to the delinquency of the ratepayer shall have the right to request and pay for continued service from the utility or reconnection of water and sewer service for the rental dwelling, which the utility shall provide.  If any water and sewer charges or fees are included in the tenant's rent, the tenant may deduct the cost of any water and sewer service charges or fees paid to the municipality from his or her rent pursuant to 9 V.S.A. § 4459.  Under such circumstances, the utility shall not require the tenant to pay any arrearage greater than one billing cycle.

24 V.S.A. § 5143(c); *see also* 2013 VT Act 94 (effective Feb. 20, 2014).  Section 5144—containing the uniform notice form—has not been amended or updated since 1989 and does not contain this information.

---

[4]  The uniform notice form must be clearly printed on a pink colored sheet of paper and consist of the language set forth in 24 V.S.A. § 5144.  The uniform notice includes the statement: "If disconnection would result in an immediate and serious health hazard to you or to a resident within your household, disconnection will be postponed upon presentation of a duly licensed physician's certificate."  24 V.S.A. § 5144

As *Brown* noted, "[a]lthough a municipality may adopt 'further procedures, ordinances, or rules providing greater protection for consumers' than is required by Vermont's Disconnect Statute, 24 V.S.A. § 5148, there is no authority to provide less."  878 F. Supp. 2d at 478; *see also* 24 V.S.A. § 3315 (providing a "municipal corporation shall have the power to make, establish, alter, amend or repeal ordinances, regulations, and bylaws relating to [waterworks] and not inconsistent with law").

### III.    Town of Fair Haven's Water Ordinance

Plaintiff attaches to his Complaint an excerpt from the Town of Fair Haven's Water Ordinance (the "Ordinance") (Doc. 13-1).  Although Plaintiff has not attached the entire Ordinance, the Court may consider the Ordinance generally because it is integral to the Complaint and part of the public record.  *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (explaining a court may take judicial notice of public records); *see Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) (taking judicial notice of provisions of a village zoning code).

The Town of Fair Haven's publicly accessible website includes the Water Ordinance. *See* Town of Fair Haven Vermont, https://fairhavenvt.gov/wp-content/uploads/2023/10/WaterOrdinance-AMENDED-3-23-2021.pdf.  The Ordinance defines "Customer" as:

> any individual, group, society, association, firm, company, or corporation who receives water service from the TOWN and is a property owner, whether or not that individual is the ultimate user.  In the case where a residential dwelling . . . is owned/leased by the occupant(s) but the occupant(s) lease the land upon which the dwelling/business unit is located (e.g., a mobile home in a mobile home park), the water service . . . shall be the responsibility of the property land owner (i.e., not the dwelling/business unit owner/tenant).

Ordinance at 3–4.  An "Owner" is "any person, who owns or possess[es] any property connected to the municipal water system or proposes to connect to the municipal water system as applicant."  *Id*. at 5.  The Ordinance clarifies that "[t]he term 'owner' is interchangeable with CUSTOMER."  *Id*.  "'Applicant' shall mean 'Owner' and can, also, mean 'Customer'."  *Id.* at 3.

Article 9 of the Ordinance addresses disconnection of service.  Section 9.01 provides that, "[u]nder the Uniform Water and Sewer Disconnect, 24 V.S.A. Chapter 129, "[delinquent] water accounts . . . may be disconnected.  Disconnections are subject to certain restrictions as specified in the Vermont Statutes."  (Doc. 13-1 at 2 (Ordinance at 31).)  Section 9.02 specifies the notice required prior to disconnection: "Before disconnection can occur, the Customer must be given notice of delinquency and advised of the possibility of having its service interrupted."  (*Id*.)  The Ordinance provides that the notice must satisfy the requirements set forth in state law, including that the notice "be on pink paper," "be on the Uniform Notice Form provided for by law," and "be sent to the occupant of the residential dwelling that will be affected by the disconnection if the occupant is different than the Customer."  (*Id.*)

Section 9.06 is titled "restoration of water service" and in relevant part provides:

> If water service has been disconnected for delinquency of payment of a valid bill or other charge, the TOWN shall, within twenty-four (24) hours, restore service upon the Customer's request when the cause for disconnection has been removed, or when an agreement has been reached between the Customer and the BOARD regarding the dispute which led to the disconnection.

(*Id.* at 3.)

## Analysis

### I.      Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "provide the grounds upon which [its] claim rests," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007), and allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff need not provide "detailed factual allegations" to support the claims alleged in the complaint, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] claim must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, the court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). When considering the complaint of a self-represented plaintiff, the court must construe the complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), reading it "to raise the strongest arguments . . . suggest[ed]," *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted). The court, however, need not credit "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, [which are] supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## II.     42 U.S.C. § 1983

Plaintiff brings his Complaint under 42 U.S.C. § 1983. A claimant may bring a suit for damages under § 1983 "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S.

158, 161 (1992) (alterations an omissions in original) (quoting 42 U.S.C. § 1983).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Id.*

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges."  *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  Section 1983, however, "is not itself a source of substantive rights" but rather it provides "a method for vindicating federal rights elsewhere conferred . . . ."  *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted).  In this case, Defendants do not dispute that Plaintiff has sufficiently alleged state action by alleging that "government officials were acting under color of law."  (Doc. 25 at 7 (quoting Doc. 13 at 2, ¶ 5).)  Defendants contend that Plaintiff has failed to adequately allege a violation of his federal rights.

## III.    Plaintiff's Constitutional Claims

Plaintiff claims that Defendants violated his Fourteenth Amendment due process rights when his water service was suspended over several days and the Town allegedly failed to provide the notice required by Vermont law and the Town's Ordinance.  Under the Due Process Clause, a state actor may not "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend XIV, § 1.  The Fourteenth Amendment thus places "constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause."  *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).

Plaintiff does not specify in the Complaint whether he is asserting a substantive or procedural due process claim under the Fourteenth Amendment.[5]  Liberally construing the Complaint's allegations as required, the Court considers the adequacy of the Complaint under both procedural and substantive due process.

As an initial matter, the Court notes that Defendants do not contest Plaintiff's valid property interest in water service, acknowledging that this Court has "recognized 'a statutorily protected property interest in water service subject to payment and reasonable connection requirements.'"  (Doc. 25 at 7 (quoting *Brown*, 878 F. Supp. 2d at 491).)

### A.      Procedural Due Process

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."  *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022) (internal quotation marks omitted).

Plaintiff contends that "proper notice following the Vermont Law" was required before water service could be discontinued.  (Doc. 13 at 1, ¶ 4.)  Specifically, he argues that the "notice [h]e got was not in the form of the Statute and did not provide all the information that it was supposed to about medical problems and getting a note from a doctor."  (*Id.* at 2, ¶ 7.)  Defendants respond that "even if the notice provided by the Town did not comply with the Disconnect Statute or the Ordinance, the Town nonetheless provided Plaintiff with

---

[5]  Plaintiff's opposition brief references both components, arguing that the Town's "notice was not adequate notice and deprived [him] of [his] substantive Due Process rights."  (Doc. 32 at 1.)  In reply, Defendants maintain that the Complaint does not state a substantive due process claim, and further contend that "*Brown* demonstrates that Plaintiff cannot state a substantive due process claim based on the facts alleged in the Complaint."  (Doc. 33 at 5.)  As discussed below in this Opinion and Order, however, after *Brown* the Second Circuit recognized a substantive due process claim on facts similar to this case.  *See Winston v. City of Syracuse*, 887 F.3d 553 (2d Cir. 2018).

constitutionally adequate due process prior to disconnecting [his] water service."  (Doc. 25 at 7–

8.)  Defendants contend Plaintiff received "adequate" due process because:

> the notice he received warned him 19 days in advance of the disconnection that the
> water might be shut off, explained why the water would be shut off, explained what
> steps Plaintiff could take to prevent the water from being shut off, and expressly
> told Plaintiff that he had an opportunity to be heard by the Town at the May 31,
> 2022 meeting before the water would be shut off.

(Doc. 33 at 4.)

Federal law determines the minimum procedural protections required by the Due Process

Clause of the U.S. Constitution.  *See Ciambriello v. County of Nassau*, 292 F.3d 307, 319

(2d Cir. 2002) ("The Constitution, not state law sources . . . , determines what process is due.").

Procedural due process generally requires that "individuals whose property interests are at stake

are entitled to notice and an opportunity to be heard."  *Dusenbery v. United States*, 534 U.S. 161,

167 (2002) (internal quotation marks omitted).

Plaintiff asserts that Defendants failed to provide him constitutionally adequate notice

because they failed to provide the notice required by state law and the Ordinance.  Plaintiff's

claim thus appears to be an as-applied challenge rather than a facial challenge.  *See City of Los

Angeles v. Patel*, 576 U.S. 409, 415 (2015) ("A facial challenge is an attack on a statute itself as

opposed to a particular application.").  To be sufficient, the notice must be "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank &

Trust Co.*, 339 U.S. 306, 314 (1950); *see also Martell v. City of St. Albans*, 441 F. Supp. 3d 6, 16

(D. Vt. 2020) (explaining "several courts have declined to adopt the test set forth in *Mathews v.

Eldridge*, 424 U.S. 319 . . . (1976), in favor of a 'more straightforward test of reasonableness

under the circumstances,' as articulated in *Mullane*" (quoting *Dusenbery*, 534 U.S. at 167)).

The flaw in Plaintiff's due process claim based on Defendant's failure to comply with the Vermont Disconnect Statute is that a violation of state law standing alone is not cognizable under § 1983.  *See Maine v. Thiboutot*, 448 U.S. 1, 1 (1980) (holding "the § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law"); *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("Clearly, a violation of state law is not cognizable under § 1983.").[6]

As to Plaintiff's due process claim based on Defendant's alleged failure to comply with the Ordinance, the failure to comply with local law does not necessarily rise to the level of a constitutional violation.  "Courts have held that provided an aggrieved party has the time and opportunity to pursue his or her claim in an available forum, due process is satisfied."  *Brown*, 878 F.3d at 493 (citing cases).  As this Court determined in *Brown*, however, a plaintiff's "private interest in water service is substantial and the risk of an erroneous deprivation of that interest is great."  *Id.* at 496.  Accordingly, the Court held that the City of Barre "must . . . comply with Vermont's Disconnect Statute in order to satisfy the requirements of procedural due process."  *Id.* (noting the "Vermont Legislature has already determined that the burdens associated with such compliance are appropriately imposed upon a municipality").

The Ordinance entitled Plaintiff—as the "occupant of the residential dwelling that will be affected by the disconnection[,]"—to the "Uniform Notice Form provided for by law."  (Doc. 13-1 at 2 (Ordinance at 31).)  Plaintiff alleges that Defendants did not follow the Ordinance and Vermont's Disconnect Statute in providing notice of potential suspension of water service, and that Plaintiff was not provided notice of certain statutory exceptions to water service termination. According to the May 13, 2022 notice attached to the Complaint, Plaintiff was not informed that

---

[6] An alleged violation of a state statute may nevertheless be cognizable under a state-law cause of action.

"[i]f disconnection would result in an immediate and serious health hazard to you or to a resident within your household, disconnection will be postponed upon presentation of a duly licensed physician's certificate." *See* 24 V.S.A. § 5144.  The notice letter also appears to omit reference to Plaintiff's right as a "tenant of a rental dwelling noticed for disconnection . . . to request and pay for continued service from the utility." *See id.* § 5143(c).

As Defendants correctly note, the May 13, 2022 letter advised Plaintiff that he had the right—before discontinuation of water service, to "plead [his] case" before the Town Selectboard.  (Doc. 13-2 at 2.)  Nevertheless, Plaintiff plausibly alleges that the notice did not inform him fully of the rights specified in state statute.  On this point, the Court acknowledges that Defendants are not contending, for purposes of the Motion to Dismiss, that the Town's notice complied with the Disconnect Statute's notice requirements.  (Doc. 33 at 3.)  Defendants are correct that a claimed violation of the Fourteenth Amendment due process right may not be premised on the violation of a *state* right; it must be grounded in the abridgement of a federal right.  (*Id.*)  However, *Brown's* holding that the City of Barre's "Ordinance, policies and practices" did not satisfy federal procedural due process standards was informed in part by the requirements of state law.  *See Brown*, 878 F. Supp. 2d at 496 ("At a minimum, the City must therefore comply with Vermont's Disconnect Statute in order to satisfy the requirements of procedural due process.")  On the limited record at this time, the Court is unable to determine as a matter of law that Plaintiff received adequate due process.  *See, e.g.*, *Morizio v. Town of Oyster Bay*, CV 14-1241 (LDW) (SIL), 2015 WL 13721649, at *4 (E.D.N.Y. Apr. 24, 2015) (declining on motion to dismiss to determine as a matter of law whether plaintiff received adequate notice and opportunity to be heard, finding that such determination should await factual development).

Therefore, at this stage in the case, accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has plausibly alleged that the notice the Town provided to him was not "reasonably calculated, under all the circumstances," to provide him sufficient notice to satisfy due process. *Mullane*, 339 U.S. at 314. Therefore, Defendants' Motion to Dismiss as to the procedural due process claim is denied.

### B.      Substantive Due Process

"To establish a substantive due process violation, a plaintiff must show both (1) that [he] has an interest protected by the Fourteenth Amendment, and (2) that the statute, ordinance, or regulation in question is not rationally related to a legitimate government interest." *Winston v. City of Syracuse*, 887 F.3d 553, 566 (2d Cir. 2018).

Plaintiff appears to allege that the Town's handling of the water disconnection did not comply with state law, notwithstanding the requirement in its Ordinance that the Town follow state law in water disconnection proceedings. As noted above, in this case Defendants do not contest that Plaintiff has a valid property interest in continued water service. As the validity of Plaintiff's property interest is not in dispute, the analysis focuses on whether the Town's Ordinance is "rationally related to a legitimate government interest." *Id.*

In *Winston*, the Second Circuit evaluated the substantive due process claim of a tenant deprived of water service due to her landlord's non-payment of fees, applying rational basis review to the relevant municipal code. *Id.* at 566 n.11 (applying rational basis review to "analyze facial challenges regarding whether a governmental entity has a proper justification for a statute or regulation"). As the Second Circuit framed Plaintiff's claim: "Winston asserts that the City is seeking to collect payment on landlords' bills by requiring tenants who have no legal obligation for those bills to pay their landlords' accounts." *Id.* at 567. The court held that the

plaintiff plausibly alleged a substantive due process claim because "such a policy scheme, which is not based in legal accountability for the debt, fails rational-basis review." *Id.*

It is not clear from Plaintiff's Complaint and its attachments whether he is asserting that Fair Haven's Water Ordinance, like the municipal code challenged in *Winston*, permits a tenant to pay the landlord's delinquent bill in order to restore water service. The ordinance in *Winston* expressly provided that "an occupant may pay the [landlord's] outstanding water bill" to restore service. *Id.* (alteration in original) (internal quotation marks omitted). Plaintiff does not allege that Fair Haven's Ordinance contains a similar provision. However, the May 13, 2022 letter to "Tenant" of potential discontinuation of water service could plausibly be interpreted to obligate the tenant to pay the landlord's delinquent bill in order to avoid discontinuation of service. (Doc. 13-2.) *Winston* held that Plaintiff stated a plausible substantive due process claim by asserting "that the City [was] seeking to collect payment on landlords' bills by requiring tenants who have no legal obligation for those bills to pay their landlords' accounts." 887 F.3d at 567.

According to the documents attached to Plaintiff's Complaint, both the Town's Ordinance and the letter the Town sent to Plaintiff appear to tie either continued or restored water service to payment in full of the landlord's delinquent balance. The letter stated that "if the delinquent balance is not paid in full, [the Town] will move forward with the discontinuation of water service." (*See* Doc. 13-2 at 2.) The Ordinance states that the Town "shall . . . restore service . . . when the cause for disconnection has been removed," which in this case was the nonpayment of Plaintiff's landlord's bill. (*See* Doc. 13-1 at 3 (Ordinance at 33).) The landlord owed the Town more than $18,000. (Doc. 13-2 at 1.) Therefore, to the extent the Town's letter

required payment in full by a tenant with no legal obligation for the bill to restore water service, such a scenario may raise substantive due process concerns under *Winston*.[7]

At this stage in the case, accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has plausibly alleged a substantive due process violation. Defendants' Motion to Dismiss as to the substantive due process claim is denied.

### C.    Equal Protection Claim

Plaintiff does not cite the Equal Protection Clause in his Complaint, but in light of his self-represented status and the Court's obligation to read his Complaint to raise the strongest arguments it suggests, the Court considers whether Plaintiff has stated a claim for a violation of his right to equal protection under the Fourteenth Amendment. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Rather, factual allegations alone are what matters. That principle carries particular force where a [self-represented] litigant is involved." (internal quotation marks and citations omitted)).

The Equal Protection Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "Whether a state law or policy satisfies this general principle, and what sort of review a court must apply, depends on the nature of the class of individuals the state or local government treats

---

[7] Given the undeveloped state of the factual record, including the intended effect of the May 13, 2022 letter to Plaintiff, the Court does not reach a definitive conclusion on the issue at this stage of the case. Further, assuming at this stage that the letter was intended to obligate the Plaintiff-tenant to pay his landlord's bill in full to avoid a service disruption, it may be inconsistent with Vermont law to the extent that the $18,506.38 in arrearages represents the amount owed over more than one billing cycle. *See* 24 V.S.A. § 5143(c) (providing that a "tenant of a rental dwelling noticed for disconnection due to the delinquency of the ratepayer shall have the right to request and pay for continued service . . . which the utility shall provide," however, "the utility shall not require the tenant to pay any arrearage greater than one billing cycle").

differently or the rights at issue." *Winston*, 887 F.3d at 560.  If a law "neither burdens a fundamental right nor targets a suspect class," the court must "uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Plaintiff may be claiming that the Ordinance, and alleged practice in this case, treat two classes of similarly situated tenants differently.  The Ordinance permits discontinuation of water service to tenants whose landlords are delinquent in paying water bills but not to those whose landlords are current.  There is no indication, however, that this difference in treatment burdens a suspect class or that continued access to water from the Town is a fundamental right.  *See Brown*, 878 F. Supp. 2d at 499.  The Ordinance is therefore accorded "a strong presumption of validity," *id.* at 500 (internal quotation marks omitted), and the highly deferential rational basis review applies.  *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993).  The required inquiry is thus "whether there is a 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'"  *Winston*, 887 F.3d at 562 (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

In addressing a similar circumstance, the Second Circuit in *Winston* held that:

> requiring a tenant without any legal obligation for a landlord's unpaid bill to pay that bill to retain or restore water service fails rational basis review.  The tenants of non-delinquent and delinquent landlords are similar in all relevant respects in this situation.  First, they rent their homes and cannot open water accounts in their own name.  Second, their landlords have the legal obligation to pay the water bills to the City; neither class of current tenants possesses a *legal* obligation to pay the unpaid water bill.  As a result, the City's policy of shutting off water to collect debts divorces itself entirely from the reality of legal accountability for the debt involved and penalize[s] . . . not the debtor but an innocent third party with whom the debtor contracted.

*Id.* at 563–64 (alteration and omission in original) (internal quotation marks omitted).  In reaching this holding, *Winston* disagreed with this Court's conclusion in *Brown* that a

municipality could suspend water service to current tenants because they "possess[ed] an undeniable relationship to the debt the City [of Barre] [sought] to collect," i.e., they used the water. *See id.* at 565 n.9 (quoting *Brown*, 878 F. Supp. 2d at 502). *Winston* explained that it found that aspect of the *Brown* analysis "unavailing" because even if "the plaintiffs were current tenants who may have contributed to the water usage resulting in the landlord's unpaid water bill . . . the City cannot rationally compel tenants to pay their landlord's bills." *Id.* at 565 (a tenant's "prior use of water does not change the fact that only the landlord is contractually obligated to the City to pay the water bills").

*Winston* further distinguished *Brown* with regard to the argument that a municipality "can rationally distinguish between tenants with delinquent landlords and tenants with non-delinquent landlords because of the delinquent landlords' non-payment." *Id.* The court explained:

> That argument fails for substantially the same reasons. Neither class of tenants possesses a legal obligation to pay their landlord's unpaid bills. The fact of the landlord's non-payment is irrelevant, because the City cannot force an individual without a legal obligation to pay the bill of another. As a result, the City cannot point to the landlord's non-payment to satisfy rational-basis review under the Equal Protection Clause.

*Id.*

It may be that, as a factual and legal matter, the Town did not intend by the May 13, 2022 notice to obligate tenants to pay landlords' delinquent bills to avoid water disconnection. On the limited facts before the Court at this time, however, Plaintiff may be similarly situated to the *Winston* plaintiff. The Ordinance allows for the disconnection of water service to tenants whose landlords have not paid their bills and provides for restoration of service "when the cause for disconnection," i.e. delinquency due to nonpayment, has been removed. (Doc 13-1 at 3 (Ordinance at 33).) Tenants whose landlords are not delinquent in paying water bills do not have their water disconnected. In the absence of a rational basis for treating the two classes of tenants

differently—as neither class of tenant is obligated to pay the landlord's water bill—an Equal

Protection Clause claim may be plausibly stated.  *See Winston*, 887 F.3d at 566; *see also Golden*

*v. City of Columbus*, 404 F.3d 950, 961–62 (6th Cir. 2005) (holding that where a landlord fails to

pay the water bill, "terminating a tenant's water service is [not] a rational means of collecting the

landlord's water service debt" because the "person directly penalized by the [shutoff] scheme is

not the debtor but an innocent third party with whom the debtor contracted").

The Court draws no conclusion on the merits of a potential Equal Protection claim.  In

light of the obligation to interpret a self-represented Plaintiff's Complaint to raise the strongest

arguments it suggests, and informed by Second Circuit precedent addressing an analogous

factual scenario, the Court permits Plaintiff to amend the Complaint to assert such a claim.

### D.    Municipal Liability Under *Monell*

"[A] municipality can be held liable under [§] 1983 if the deprivation of the plaintiff's

rights under federal law is caused by a governmental custom, policy, or usage of the

municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).  "[A] municipality

cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 691 (1978); rather, liability will attach only where the action of the

municipality itself can be said to have caused the harm.  *See Nagle v. Marron*, 663 F.3d 100, 116

(2d Cir. 2011).  Thus, a municipality can be held liable when "the action that is alleged to be

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 690.  In

addition, "when a municipality 'chooses a course of action tailored to a particular situation,' this

may also 'represent[] an act of official government "policy" as that term is commonly

understood.'"  *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (alteration in

original) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004)).  To

attach such liability to a municipality, a plaintiff must show a "direct causal link" between the

official policy and the alleged constitutional deprivation.  *City of Canton v. Harris*, 489 U.S. 378,

385 (1989).

      Plaintiff's Complaint falls short of stating a *Monell* claim.  Although Plaintiff generally

alleges throughout the Complaint that "the Town" has engaged in unlawful practices regarding

discontinuation of water service, such general allegations are insufficient, particularly at this

stage when the precise nature of the alleged unconstitutional conduct is undeveloped.  Plaintiff's

conclusory allegation that the "Town of Fair Haven has a history, custom or policy of violating

people's civil rights and not following Statutes" is insufficient to state a *Monell* claim.  (Doc. 13

at 3, ¶ 15.)

### E.    Plaintiff's Claims against Individual Defendants

      Defendants contend that the claims against the individual Defendants should be

dismissed because Plaintiff fails to allege the Defendants' personal involvement in any of the

specific conduct that allegedly caused the constitutional violation.  (Doc. 25 at 14.)  Plaintiff

responds that it was "someone in the Town who did it and it will only be through discovery and

asking questions of the Town will [he] be able to find out who . . . was personally involved."

(Doc. 32 at 2.)

      Plaintiff alleges that the "Town Manager, Joseph Gunter, was well aware the water was

being shut off because it was by consensus of the Selectboard on May 31, 2022 at a meeting.

Mr. Gunter and Selectboard members Glen Traverse and Jay Brown were very [v]ocal about

shutting the water off to our families."  (Doc. 13 at 3, ¶ 12.)  Plaintiff further alleges that

Defendants Gunter and Traverse "were aware of the law the Town had to follow because the

Vermont Law Disconnect Notice is mentioned in the Ordinance they approved in March.  Yet they ignored the law, violated our civil rights and did not give us the Due Process Notice." (*Id.* ¶ 14.)  The Complaint also alleges that Town Health Officer Lulek came to the Park after the water was shut off and advised residents that they could not live on the property without running water.  After Park residents asked Lulek to leave, he returned later with Defendant Constable Galvin to advise residents that they had to leave the Park within 15 days due to the lack of running water.  (*Id*. at 2–3, ¶¶ 10, 11.)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotation marks omitted).  A litigant can only plead that an official committed a constitutional deprivation "through the official's own individual actions." *Iqbal*, 556 U.S. at 678.  Even if the violation is alleged against a supervisory official, that "violation must be established against the supervisory official directly." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  An official who is directly involved "includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014); *see also Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135–36 (2d Cir. 2013) (holding that a plaintiff proceeding under § 1983 must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation); *Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (holding that a § 1983 claim that fails to allege the personal involvement of the defendant fails as a matter of law).

Plaintiff alleges no facts demonstrating that Selectboard members Christopher Cole, Robert Richards, or Richard Goodnough were personally involved in any of the allegedly

unconstitutional conduct.  The only reference in the Complaint to these Selectboard members is in the case caption.  A § 1983 claim that does not allege the personal involvement of the defendant fails as a matter of law.  *See Terry v. N.Y.C. Dep't of Corr.*, No. 10 Civ. 6197, 2012 WL 718555, at *2 (S.D.N.Y. Mar. 6, 2012) ("It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint" should be granted.). Accordingly, any purported § 1983 claims against Defendants Cole, Richards, and Goodnough in the Complaint are DISMISSED.

However, the Court declines at this stage to dismiss Defendants Gunter, Brown, and Traverse from the case.  Plaintiff alleges that Defendant Town Manager Gunter "was well aware the water was being shut off because it was by consensus of the Selectboard on May 31, 2022 at a meeting."  (Doc. 13 at 3, ¶ 12.)  He further alleges that "Mr. Gunter and Selectboard Members Glen Traverse and Jay Brown were very [v]ocal about shutting the water off to our families." (*Id*.)  He notes that Defendants Gunter and Traverse were Selectboard Members when the Town's Ordinance was amended in March 2021.  (*Id*. ¶ 13.)  By their participation as Selectboard Members in the amendment of the Ordinance, Plaintiff asserts that Defendants Gunter and Traverse knew that the Town's notice procedures for disconnection of water service were required to adhere to the requirements of state law (as explicitly referenced in the Ordinance).  (*Id*. ¶ 14.)  Although Plaintiff does not allege that Defendants Gunter, Brown, and Traverse were personally involved in the actual creation or promulgation of the notice itself that is alleged to be constitutionally inadequate, he is arguably alleging that the deprivation of his federal rights occurred through the acts of these Town officials who authorized the purportedly

deficient Town procedures.  Therefore, the Court does not dismiss the § 1983 claims against Defendants Gunter, Brown, and Traverse.

Finally, because Plaintiff alleges that Defendant Galvin's involvement occurred after the alleged constitutional violations related to notice of the water disconnection and the disconnection itself, Plaintiff has not sufficiently alleged his personal involvement in the alleged constitutional violations.  Thus, any purported § 1983 claims against Defendant Galvin in the Complaint are DISMISSED.

The Defendants' Motion to Dismiss the § 1983 claims as to Defendants Cole, Richards, Goodnough, and Galvin is GRANTED.  Given that the § 1983 claims under the Fourteenth Amendment have not been dismissed—and these claims allege that the deprivation resulted from purportedly deficient town procedures—Defendants' Motion to Dismiss the § 1983 claims as to Defendants Gunter, Brown, and Traverse is DENIED.

## IV.    State-Law Claims

In addition to the federal claims discussed above, Plaintiff alleges state-law claims of intentional or negligent infliction of emotional distress.  (Doc. 13 at 4, ¶ 18.)  Defendants move to dismiss Plaintiff's state-law claims on the ground that the Court should decline to exercise supplemental jurisdiction.  (Doc. 25 at 16.)  Although Defendants are correct that where a federal court dismisses the federal-law causes of action, it may in its discretion decline to exercise supplemental jurisdiction over the remaining state-law causes of action, 28 U.S.C. § 1367(c)(4); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006), the Court has determined that Plaintiff has alleged plausible federal claims.  Therefore, the exercise of supplemental jurisdiction over any potential state-law claims under 28 U.S.C. § 1367 is authorized.  *See* 28 U.S.C. § 1367(a) (providing that "in any civil action of which the district

courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all

other claims that are so related to claims in the action . . . that they form part of the same case or

controversy").

As the federal claims remain in the case at this time, and Plaintiff will have an

opportunity to amend the Complaint, Defendants' Motion to Dismiss the state-law claims is

DENIED.

## V.    Leave to Amend

Plaintiff requests that, in the event Defendants' Motion to Dismiss is granted, he be given

an opportunity to amend his complaint.

"A party may amend its pleading once as a matter of course no later than: (A) 21 days

after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days

after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . ,

whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  Because Plaintiff seeks to amend his Complaint

outside of the time period for amendments as a matter of course, he is required to obtain the

opposing party's written consent or leave of the court, which the court "should freely give . . .

when justice so requires."  *Id.* 15(a)(2).

In light of Plaintiff's self-represented status, and given the Court's conclusion that

Plaintiff may have plausible claims, the Court GRANTS Plaintiff leave to amend his Complaint.

If Plaintiff elects to file an amended complaint, he is encouraged to request the assistance of

Vermont Legal Aid or another legal services organization.

Plaintiff is advised that an amended complaint, if filed, will supersede and completely

replace the original Complaint.  *See Hancock v. County of Rensselaer*, 882 F.3d 58, 63 (2d Cir.

2018).  Accordingly, an amended complaint, if filed, must be titled "Amended Complaint" and

include all of Plaintiff's factual allegations in their entirety and must set forth all the claims he

has against all defendants and all the relief he seeks.  *See* Fed. R. Civ. P. 8(a); D. Vt. L.R. 15(b).

In other words, Plaintiff may not simply file an amended complaint alleging facts pertaining only

to the dismissed claims while incorporating by reference the claims in his original Complaint that

have not been dismissed.  The amended complaint will be the operative document and therefore

must set forth *all* legal claims and requests for relief, *all* parties, and supporting factual

allegations.

 In the event Plaintiff chooses to continue to represent himself, Plaintiff should consult the

Court's "Representing Yourself as a *Pro Se* Litigant Guide," available at

www.vtd.uscourts.gov/sites/vtd/files/ProSeGuide113015.pdf, or contact the District of Vermont

Clerk's Office for a self-represented party's informational pamphlet.

## <u>Conclusion</u>

 For the reasons explained above, Defendants' Motion to Dismiss (Doc. 25) is GRANTED

in part and DENIED in part.

 The Complaint does not include allegations pertaining to Defendants Cole, Richards, or

Goodnough and therefore fails to state a claim against them.  The Complaint is dismissed as to

Defendants Cole, Richards, and Goodnough.

 The Complaint does not allege the personal involvement of Defendant Galvin in any

deprivation of a federal right and therefore fails to plead a viable § 1983 as to him.  Thus, any

purported § 1983 claim against Defendant Galvin is dismissed.  However, the Complaint is not

dismissed against Defendant Galvin as to the remaining state-law claims.

 The *Monell* claim against the Town of Fair Haven is dismissed.

The Motion to Dismiss is DENIED as to Plaintiff's due process and equal protection claims.

If Plaintiff elects to file an amended complaint, he must do so by June 21, 2024.

Dated at Burlington, in the District of Vermont, this 20th day of May 2024.

*/s/ Kevin J. Doyle*
United States Magistrate Judge